**Dwight Sheridan LEWIS, Plaintiff,**

v.

**UNITED STATES of America and Lockwood Brothers, Inc., Defendants.**

**Civ. A. No. 2:92CV408.**

United States District Court, E.D. Virginia, Norfolk Division.

Memorandum Opinion and Order On Motion to Reconsider Sept. 29, 1992.

Decided Jan. 20, 1993.

C. Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for plaintiff Dwight Sheridan Lewis.

R. John Barrett, Edward J. Powers, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendant Lockwood Bros., Inc.

Kenneth Melson, Richard Thornberg, U.S. Attys., John F. Kane, Asst. U.S. Atty., Norfolk, VA, for defendant U.S. and Lockwood Bros., Inc.

## MEMORANDUM OPINION

PAYNE, District Judge.

### Statement Of The Relevant Facts

Dwight Sheridan Lewis ("Lewis") was a crewmember on board the vessel UEB–1 which, in August 1990, was owned and operated by the United States of America ("United States"). According to Lewis, on or about August 8, 1990, the tug CAPELLA, which was owned and operated by Lockwood Brothers, Inc. ("Lockwood"), collided with the UEB–1 while attempting to moor astern the UEB–1. The incident allegedly took place while the UEB–1 was anchored in the Atlantic Ocean east of Key West, Florida. Lewis, who says he witnessed the CAPELLA strike the starboard stern ladder of UEB–1, alleges that, as a consequence of the collision, the starboard

stern ladder on the UEB–1 was damaged. (Lewis Affidavit, ¶¶ 6, 7).

Lewis also claims that, on August 10, 1990, he was climbing the stern ladder of the UEB–1 when a weld securing the ladder rung to the ship gave way. As a result, Lewis says he lost his footing and was injured. (Lewis Affidavit, ¶ 9).

On June 3, 1992, Lewis filed a personal injury action against the United States and Lockwood in this court. ("Civil Action 408"). Subject matter jurisdiction over Lewis' claim against the United States is said to exist under "the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, the Public Vessels Act, 46 U.S.C. §§ 781–790, the general maritime laws of the United States as modified by the Jones Act, 46 U.S.C.A. § 688, et seq., and any other applicable state and/or federal law." (Complaint, ¶ 1). Lewis also alleged that the court has subject matter jurisdiction over his claim against Lockwood:

> "based upon the ancillary and/or pendent jurisdiction of this court as well as the fact that the defendant is incorporated and its principal place of business is in a state other than in the Commonwealth of Virginia, and that the amount in controversy exceeds $50,000, exclusive of interests and costs, and further that this action involves the General Maritime Law of the United States since it involves collision, accident between two vessels on the high seas." [1]

On July 20, 1992, Lockwood filed a Motion to Dismiss pursuant to Fed.R.Civ.P.

12(b)(6) and Fed.R.Civ.P. 12(f).[2] Lewis responded on July 24, 1992.

On August 6, 1992, Lewis filed in the Circuit Court of the City of Norfolk an identical action against Lockwood alleging that his claims against Lockwood arose out of the general maritime law of the United States. Lockwood filed a timely Notice of Removal ("Civil Action 668") wherein it asserted that this court had original jurisdiction over the removed state action under the provisions of 28 U.S.C. § 1333. Lockwood simultaneously filed a Motion to Consolidate Civil Action 408 and Civil Action 668. On August 31, 1992, Lewis moved to remand Civil Action 668 to the state court.

For the reasons set forth below, the court grants Lewis' Motion to Remand Civil Action 668, denies Lockwood's Motion to Dismiss/Motion for Summary Judgment in Civil Action 408, and denies Lockwood's Motion to Consolidate.

### Discussion

Lockwood asserts that this court has subject matter jurisdiction over Civil Action 668 pursuant to 28 U.S.C. § 1333.[3] Accordingly, Lockwood attempted to remove the state action pursuant to 28 U.S.C. § 1441(b).[4]

Lockwood correctly concedes that a general maritime claim brought in a state court, such as the one asserted against it here, is generally not removable absent independent grounds for federal jurisdiction. (*See* Supplemental Brief of Lockwood Brothers, Inc. in Support of its Motion to

---

**1.** Complaint, ¶ 14. At the hearing on September 1, 1992, Lewis conceded that no diversity of jurisdiction exists in this case.

**2.** The motion to dismiss referred to matters outside the Complaint and hence must be considered as a motion for summary judgment. Fed.R.Civ.P. 12(b). In subsequent filings, the motion is identified as "Motion to Dismiss/Motion for Summary Judgment."

**3.** In pertinent part, § 1333 reads:
The district courts shall have original jurisdiction, exclusive of the courts of the states, of;
 (A) Any civil case of admiralty or maritime jurisdiction, savings to suitors in all cases all other remedies to which they are otherwise entitled. ...

**4.** Section 1441(b) provides:
 Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
 Since no diversity of citizenship exists in this case, removal would be improper under 28 U.S.C. § 1441(c).

Dismiss/Motion for Summary Judgment, at p. 5). Hence Lockwood does not challenge the correctness of the decision in *Coley v. Dragon, Ltd.*, 138 F.R.D. 460 (E.D.Va. 1990), wherein the court held that "except when there exists some basis for federal jurisdiction other than admiralty, (such as diversity jurisdiction), maritime litigation brought in state courts cannot be removed to federal courts." *Id.* at 464 (citing *Poirier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir.1981)). Relying on the decision in *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1958), *Coley* explained that a general maritime action brought under 28 U.S.C. § 1333, such as the one brought here by Lewis against Lockwood, does not give rise to a federal question for the purposes of removal under 28 U.S.C. § 1441(b):

> Maritime actions arising under the general maritime law are not claims that arise under the "Constitution, treaties, or laws of the United States" for purposes of invoking federal question jurisdiction under 28 U.S.C. § 1331... *Romero's* holding that maritime claims are not encompassed within the "arising under" clause of § 1331 is equally applicable to the "arising under" clause of § 1441(b), the federal removal statute.

138 F.R.D. at 464 (citations omitted).

Recognizing the teaching of *Coley* and acknowledging that Civil Action 668 ordinarily would not be removable, Lockwood nonetheless asks the court to hold that, by previously filing an identical action (Civil Action 408) against it in federal court, Lewis has waived his "savings to suitors" rights and his consequent right to remand.

■ The several decisions cited by Lewis in support of this purported waiver are not persuasive. Although those decisions support the proposition that the right to remand is waivable in certain circumstances, they involve waiver of *procedural* defects in removal. Here, the asserted waiver involves the original subject matter jurisdiction of the court over the action filed in state court. Hence, even if Lewis had waived the objection, the waiver would not be effective. As the United States Court of Appeals for the Fifth Circuit made clear in *In re Carter*, 618 F.2d 1093, 1100 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981):

> [I]f the asserted ground for remand is the federal court's lack of subject matter jurisdiction, the concepts of equity, waiver, and estoppel are inapplicable. The subject matter jurisdiction of federal courts is limited by the Constitution and the Congress, and cannot be expanded by judicial interpretation or by the acts or consent of the parties to a case.

Accordingly, the court will remand Civil Action 668 to the Circuit Court for the City of Norfolk.[5]

For different reasons, the court declines to decide the Motion to Dismiss/Motion for Summary Judgment in Civil Action 408. That motion seeks summary adjudication of the general maritime claims which Lewis asserts against Lockwood in the same action wherein he is prosecuting his federal question claims against the United States.[6]

At the hearing on September 1, 1992, Lewis conceded the absence of federal question or diversity of citizenship jurisdiction over his general maritime claims against Lockwood. The supplemental brief filed by Lewis at the court's direction makes the same concession and asserts that the court has jurisdiction over the claim against Lockwood only under 28 U.S.C. § 1367. Lockwood, on the other hand, argues that the court has subject matter jurisdiction over Lewis' claims against it "under the admiralty jurisdiction of this court." (Supplemental Brief of Lockwood Brothers, Inc. at 3). For the reasons set forth above, and under the decision in *Coley v. Dragon, Ltd.*, 138

---

5. In light of this decision, Lockwood Brothers' Motion to Consolidate becomes moot.

6. Lewis brings his action against the United States under "the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, the Public Vessels Act, 46 U.S.C. §§ 781–790, the general maritime laws of the United States as modified by the Jones Act, 46 U.S.C.A. § 688, et seq., and any other applicable state and/or federal law." (Complaint, ¶ 14).

F.R.D. 460 (E.D.Va.1990), the court has concluded that it lacks original subject matter jurisdiction over general maritime negligence claims against a non-diverse defendant such as Lockwood. Accordingly, the court may take cognizance of Lewis' claim against Lockwood only if there is supplemental jurisdiction under 28 U.S.C. § 1367.

Both parties contend that under 28 U.S.C. § 1367 this court could, in its discretion, exercise pendent party jurisdiction over Lockwood and decide the general maritime claims against it. Section 1367(a) provides in pertinent part that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

28 U.S.C. § 1367(a) (1990) (emphasis added).

As the emphasized language provides, the supplemental jurisdiction statute expressly envisions the exercise of the kind of pendent party jurisdiction previously disapproved by the Supreme Court of the United States in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Section 1367 effectively overrules *Finley* and provides for the exercise of pendent party jurisdiction in cases where the pendent party claims derive from the same "common nucleus of operative facts" as the claims which fall within the district court's original jurisdiction, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), thereby forming part of the same case or controversy under Article III of the Constitution of the United States. *See, e.g., Sinclair v. Soniform, Inc.,* 935 F.2d 599 (3d Cir.1991); *Arnold v. Kimberly Care Nursing Service,* 762 F.Supp. 1182 (M.D.Pa.1991).

■ The claims against Lockwood arise out of a collision which occurred on August 8, 1992. They are predicated on Lockwood's alleged negligence and on the allegedly unseaworthiness of the CAPELLA (Complaint, ¶ 13). The offending conduct is said to be striking, or alternatively avoiding the collision with, the ladder of the UEB–1. The claims against the United States are the alleged unseaworthiness of the UEB–1 and the negligence of the United States, which collectively are said to consist of the 1) failure to provide a safe place to work; 2) failure to notice and repair the allegedly damaged ladder; 3) failure to warn of a dangerous condition; and 4) failure to abide by the terms of various unspecified safety rules and regulations. Presumably, these omissions occurred between August 8, 1990, the date of the alleged collision, and August 10, 1990, the date Lewis was injured. Giving Lewis the benefit of any doubts, it is conceivable that the general maritime claims against Lockwood derive from the same common nucleus of operative fact as the claims against the United States, and that this court could exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a).

■ The analysis, however, does not end there. Section 1367(c) lists four factors which must be considered in deciding whether to exercise supplemental jurisdiction. These factors are:

1. Whether the state claim raises a novel or complex issue of state law;

2. Whether the state claim substantially predominates over the claim over which the district court has original jurisdiction;

3. Whether the district court has dismissed all claims over which it has original jurisdiction; and

4. Whether, in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

If any of these factors are found to exist, the court may decline to exercise jurisdiction.

■ There are "other compelling reasons for declining jurisdiction" in this case. Lewis has invoked his right to a trial by

jury under Fed.R.Civ.P. 38 as to his claims against Lockwood. The claims against the United States, however, must be tried to the court. There is, of course, authority that would permit Lewis' pendent claims against Lockwood to be tried to a jury at the same time as the court hears the evidence on his claims against the United States. However, under the somewhat unusual facts giving rise to this action, there is the substantial risk of confusion and prejudice which strongly overrides any benefit that might flow from proceeding in that fashion.

Moreover, Civil Action 668 must be remanded to the state court. It would serve neither the interests of judicial economy nor fundamental fairness to require Lockwood to defend itself simultaneously in two different courts on the same claims. Having elected to pursue his general maritime claims against Lockwood in the Circuit Court for the City of Norfolk, Lewis cannot be heard successfully to argue that, at the same time, this court should exercise supplemental jurisdiction over those claims. For these reasons, the court declines to exercise supplemental jurisdiction over Lewis' general maritime claims against Lockwood in Civil Action 408. Accordingly, the court is not empowered to decide Lockwood's Motion to Dismiss/Motion for Summary Judgment in that action.

The Clerk is directed to file this Memorandum Opinion in Civil Action 408 and in Civil Action 668 and to send copies of it to all counsel of record.

### MEMORANDUM OPINION AND ORDER ON MOTION TO RECONSIDER

This civil action is presently before the court on the Motion to Reconsider and Alter the Court's Memorandum Opinion and Order of September 29, 1992, filed by the defendant, United States of America (the "United States").

### Statement of Facts

The facts set forth fully in the Memorandum Opinion and Order dated September 29, 1992 ("September 29 Opinion") are incorporated by reference here. As explained there, Lewis was a crewmember on board the vessel UEB–1 which, in August 1990, was owned and operated by the United States. According to Lewis, on or about August 8, 1990, the tug CAPELLA, which was owned and operated by Lockwood Brothers, Inc. ("Lockwood") collided with the UEB–1 while attempting to moor astern the UEB–1. The incident allegedly occurred while the UEB–1 was anchored in the Atlantic Ocean east of Key West, Florida. Lewis, who says he witnessed the CAPELLA strike the starboard stern ladder of UEB–1, alleges that as a consequence of the collision the starboard stern ladder on the UEB–1 was damaged. (Lewis Affidavit, ¶¶ 6, 7).

Lewis also claims that on August 10, 1990 he was climbing the stern ladder of the UEB–1 when a weld securing the ladder rung to the ship gave way. As a result, Lewis says he lost his footing and was injured. (Lewis Affidavit, ¶ 9).

On June 3, 1992, Lewis filed this personal injury action naming the United States and Lockwood as defendants. Above the caption of his complaint Lewis demanded a trial by jury. In the section titled "FIRST CAUSE OF ACTION," Lewis sought recovery from the United States under:

> "the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, the Public Vessels Act, 46 U.S.C. §§ 781–790, the general maritime laws of the United States as modified by the Jones Act, 46 U.S.C.A. § 688, et seq., and any other applicable state and/or federal law."

(Complaint at ¶ 1). Lewis also asserted that the court had jurisdiction over his claim against the United States:

> "under both the Suits in Admiralty Act and the Public Vessels Act pertaining to the tort injury occurring aboard a United States Naval Vessel."

(Complaint, ¶ 2).[1]

In his "SECOND CAUSE OF ACTION," which is the focus of the current motion,

---

**1.** The parties do not dispute that jurisdiction over Lewis' claim against the United States is proper in this court under those statutes.

Lewis sought recovery from Lockwood for negligence under the "General Maritime Law of the United States." (Complaint, ¶'s 13 & 14). Lewis explained that his claim against Lockwood was:

based upon the ancillary and/or pendent [sic] jurisdiction of this court as well as the fact that the defendant is incorporated and its principal place of business is in a state other than in the Commonwealth of Virginia, and that the amount in controversy exceeds $50,000, exclusive of interests and costs, and further that this action involves the General Maritime Law of the United States since it involves collision, accident between two vessels on the high seas.

(Complaint, ¶ 14). This explication of the basis for subject matter jurisdiction was perhaps inartful, but it is not unreasonable to construe the complaint as advancing three possible bases for federal district court jurisdiction over Lewis' claim against Lockwood: (1) supplemental jurisdiction under 28 U.S.C. § 1367; (2) diversity jurisdiction under 28 U.S.C. § 1332; and (3) general admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1).

At oral argument, Lewis conceded the absence of diversity jurisdiction. That left supplemental jurisdiction and admiralty and maritime jurisdiction as the possible bases for subject matter jurisdiction over the claims against Lockwood.

■ In the September 29 Opinion, the court held: (1) that Lewis' general maritime law claim against Lockwood was not within the court's original subject matter jurisdiction; and (2) that, although the court could, in its discretion, exercise supplemental jurisdiction over the general maritime law claim against Lockwood under 28 U.S.C. § 1367, there existed compelling reasons unique to this case which militated in favor of declining supplemental jurisdiction. In reciting the absence of admiralty jurisdiction over the claims against Lockwood, the September 29 Opinion stated: "[f]or the reasons set forth above, and

under the decision in *Coley v. Dragon, Ltd.*, 138 F.R.D. 460 (E.D.Va.1990), the court has concluded that it lacks original subject matter jurisdiction over general maritime negligence claims against a nondiverse defendant such as Lockwood." The United States filed this motion to reconsider purportedly on the ground that the quoted language was an incorrect statement of the law of admiralty jurisdiction. Upon reconsideration, the court finds that the quoted language is indeed too broad. The court intended only to hold that there is no subject matter jurisdiction under 28 U.S.C. § 1333 over general maritime claims against non-diverse defendants such as Lockwood where, as here, the text of the plaintiff's complaint fails to invoke that jurisdiction.

This clarification, however, does not satisfy the United States because the principal motivation for the motion to reconsider is to secure a decision that Lewis' claim against Lockwood can be asserted only in admiralty. To that end, the United States argues that Lewis "sued in admiralty whether he intended to or not" because he asserted a claim under the general maritime law of the United States.[2] For the reasons set forth below, the court considers the position advanced by the United States to be without merit and declines to accept it.

Discussion

Although the claim against Lockwood would have fallen within the court's admiralty jurisdiction if Lewis had invoked that jurisdiction, the court remains of the view that Lewis did not invoke admiralty jurisdiction and hence declines the invitation of the United States to force Lewis unwillingly to pursue his claim against Lockwood in admiralty.

28 U.S.C. § 1333(1) gives the federal district courts "original jurisdiction, exclusive of the courts of the States," over admiralty and maritime cases, "saving to suitors in all cases all other remedies to which they are otherwise entitled." The so-called

2. The United States predicates its standing to raise this issue in the fact that the court, having declined supplemental jurisdiction over the ac-

tion against Lockwood, also dismissed the crossclaim of the United States against Lockwood.

"saving to suitors" clause is interpreted to reserve to plaintiffs the right to a common law remedy "in all cases where the common law is competent to give it." *Leon v. Galceran*, 78 U.S. (11 Wall.) 185, 191, 20 L.Ed. 74 (1871). "Since the common law is competent in all cases where the suit is *in personam*, a plaintiff may elect either to proceed in admiralty or to bring an ordinary civil action, either in state court or in federal court if diversity or some other form of federal jurisdiction is present." *Coley v. Dragon, Ltd.*, 138 F.R.D. 460, 464 (E.D.Va.1990) (citing *Pryor v. American President Lines*, 520 F.2d 974, 976 (4th Cir.1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976)).

Fed.R.Civ.P. 9(h) provides in pertinent part:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.

Fed.R.Civ.P. 9(h).

■ There are "numerous and important consequences" attendant upon the decision to treat a case as within admiralty jurisdiction. *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586 (5th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). These include: the entitlement to special rules of procedure; the applicability of special venue rules and special rules respecting interlocutory appeals; and the availability of certain unique remedies. *Id.* at 587. The most important consequence in this action, however, is the unavailability of trial by jury. *See, e.g., Coley v. Dragon, Ltd.*, 138 F.R.D. 460, 464 (E.D.Va.1990) ("the significance of the election to proceed in admiralty or as an ordinary civil action relates to distinctive procedural requirements and remedies available in admiralty claims and the fact that there is no right to a trial by jury of an admiralty claim."); Fed.R.Civ.P. 38(e).

Fed.R.Civ.P. 9(h) operates as "an identification mechanism" through which a plaintiff can designate his claim as within the admiralty jurisdiction of the federal courts and thereby "enjoy the particular benefits available to such claims." *Siragusa v. Standard Steamship Owners Protection (In re Armatur)*, 710 F.Supp. 404, 405 (D.P.R.1989). Upon making the election to secure those benefits, the plaintiff forfeits certain other benefits, including the right to trial by jury. Of course, by declining to invoke Rule 9(h), a plaintiff can choose to proceed under the rules and procedures applicable to civil actions. However, it is clear that Rule 9(h) vests the choice in the plaintiff and that the:

> [c]hoice should not be forced upon him. Moreover, the choice to designate a claim as an *admiralty* claim requires an affirmative statement; if that statement is not made, the rules regarding civil actions, and not those governing admiralty actions, should apply.

*Id.* (emphasis is original). *Accord* 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1313, at p. 715 (1990) (when a claim is cognizable both as a civil and as an admiralty action, the claimant should retain his choice whether or not to invoke the special admiralty procedures); 2A *Moore's Federal Practice* ¶ 9.09, at p. 9–89 (2d ed. 1992).

The United States relies on *T.N.T. Marine Service v. Weaver Shipyards*, 702 F.2d 585 (5th Cir.1983), and *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341 (5th Cir.1991), in support of its related contentions: (i) that it is not necessary to specifically invoke Rule 9(h) in order to invoke the court's admiralty jurisdiction; and (ii) that Lewis invoked admiralty jurisdiction in this case "whether he intended to or not" because he asserted a claim under the General Maritime Law of the United States. While it is correct that the decisions in *T.N.T.* and *Teal* both imposed admiralty jurisdiction on an unwill-

ing plaintiff, they did so in circumstances not applicable here.

For example, in *Teal*, the plaintiffs titled their complaint: "COMPLAINT *WITHIN THE ADMIRALTY AND MARITIME JURISDICTION* PURSUANT TO THE GENERAL MARITIME LAW OF THE UNITED STATES OF AMERICA ...," 933 F.2d at 345 (emphasis added), which the United States Court of Appeals for the Fifth Circuit held to constitute "a simple statement asserting admiralty or maritime claims" as required by Rule 9(h). *Id.* The caption of the complaint in the present case contains no such statement and hence, unlike the complaint in *Teal*, evidences no intent to proceed in admiralty. The complaint in *Teal* also stated that the case was "cognizable under *the admiralty and maritime jurisdiction* pursuant to the General Maritime Law of the United States of America, 28 U.S.C. § 1333 and diversity of citizenship. ..." *Id.* (emphasis added). By contrast, the complaint against Lockwood states only that the action "involves the General Maritime Law of the United States," (*see* Complaint, ¶ 14), and does not invoke 28 U.S.C. § 1333. The absence of the express assertion of admiralty jurisdiction in Lewis' "SECOND CAUSE OF ACTION," which involves only Lockwood, is particularly instructive considering that the "FIRST CAUSE OF ACTION," which involves only the United States, expressly invokes the court's admiralty jurisdiction. Moreover, in *Teal* the plaintiffs asserted an *in rem* action against the vessel on which they were injured, which is a claim that falls within the exclusive maritime jurisdiction. *Id.* Lewis has not asserted an *in rem* action. Finally, the plaintiffs in *Teal* did not demand a trial by jury, a decision which is consistent with a desire to proceed in admiralty. In this action, Lewis *did* demand trial by jury which, of course, is inconsistent with an intent to proceed in admiralty. In *Teal*, the court of appeals held that these factors, which are not present here, made clear that the plaintiffs intended to invoke the court's admiralty jurisdiction even though they had not specifically made reference to Rule 9(h).

In *T.N.T.*, the court of appeals found that a statement in the complaint which averred that "this is also a suit for breach of a maritime contract and for maritime tort" was sufficient to constitute "a simple statement asserting admiralty or maritime claims under the first sentence of Rule 9(h)." *Id.* at 588. The court found further support for its decision in the fact that the plaintiff in *T.N.T.*, like the plaintiff in *Teal*, had asserted an *in rem* action against the vessel. *Id.* Under those circumstances, the court held that the plaintiff had elected to proceed in admiralty and therefore denied his demand for trial by jury.

Because *T.N.T.* and *Teal* are factually distinguishable from this action in significant ways, the court does not consider either decision to be persuasive or dispositive of the issues presented by the facts of this action. Under those decisions and the interpretation of Rule 9(h) advanced here by the United States, Rule 9(h) is transformed from a "plaintiff-friendly device in which plaintiffs can, if they so choose, utilize the special benefits provided admiralty claims" into a trap by which plaintiffs can inadvertently forfeit a right to a jury trial which they had otherwise intended to preserve. *In re Armatur*, 710 F.Supp. 404, 408. The court declines to interpret the federal rules in a fashion which will have that result, particularly upon the fundamental right to trial by jury where, as here, plaintiff has indicated in several ways that he does not desire to proceed in admiralty.

■ In the absence of guidance from the United States Court of Appeals for the Fourth Circuit, the court concludes that the better view is that invoking the admiralty jurisdiction requires an identification of the claim as one in admiralty in accordance with Rule 9(h). This is said to comport with the weight of authority. *See* 2A Moore's Federal Practice ¶ 9.09 (2d ed. 1992) (citations omitted). It is also consistent with the pleading instructions offered by the rules of procedure. For instance, Fed.R.Civ.P. Official Forms 2(d) and 15 suggest that "if the pleader wishes to invoke the distinctively maritime procedures referred to in Rule 9(h)," the pleader

should "add the following or its substantial equivalent [to the Complaint]: This is an admiralty or maritime claim within the meaning of Rule 9(h)." [3] *Accord In re Armatur,* 710 F.Supp. 404, 408 (D.P.R. 1989) ("the best practice, if a plaintiff wants to designate a claim as an admiralty claim, is to include a statement which identifies the claim as an admiralty or maritime claim within the meaning of Rule 9(h)"); *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413, 1418 (W.D.La.1988); 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1313, at p. 718 (1990) (Official Forms 2(d) and 15 indicate how a pleader may make his choice of procedures clear). *Cf. Banks v. Hanover Steamship Corp.,* 43 F.R.D. 374, 376–77 (D.Md.1967) ("An allegation that the claim is within the admiralty and maritime *jurisdiction* does not *automatically* make it an admiralty or maritime *claim,* within the meaning of Rule 9(h), if the claim is also within the jurisdiction of the district court on some other ground. A statement identifying the pleading as an admiralty and maritime *claim* is necessary.") (emphasis in original).

Lewis did not identify his "SECOND CAUSE OF ACTION" (against Lockwood) as an admiralty or maritime claim by invoking Fed.R.Civ.P. 9(h) or otherwise. To the contrary, his complaint, taken as a whole, signals an intent not to invoke admiralty jurisdiction over his claim against Lockwood.

In a related argument, the United States suggests that Lewis' maritime claims were cognizable only in admiralty and therefore, under the second sentence of Rule 9(h), no identifying statement was necessary.[4] This contention is also without merit. Although Lewis erroneously attempted to invoke the court's diversity jurisdiction, his complaint also invoked the "ancillary and/or pendant jurisdiction" of this court. (Complaint at ¶ 14). Lewis' general maritime claim against Lockwood was not "cognizable only in admiralty" because it was cognizable also as a pendant party claim pursuant to the jurisdictional grant conferred by 28 U.S.C. § 1367. (*See* September 29 Opinion, at pp. 627–628).[5] The United States has cited, and the court has found, no authority which requires a different result merely because the court declined to exercise that jurisdiction.

Conclusion

For the foregoing reasons, the Motion to Reconsider and Alter the Court's Memorandum Opinion and Order of September 29, 1992, is DENIED.

It is so ORDERED.

---

**3.** *T.N.T. Marine Service,* despite its ultimate result, states that "the preferable technique might be to expressly invoke Rule 9(h)." 702 F.2d 585, 587–88.

**4.** The second sentence of Rule 9(h) provides: "If the claim is cognizable only in admiralty, it is an admiralty or maritime claim whether so identified or not."

**5.** The brief of the United States erroneously views pendant party jurisdiction from the perspective of the decision of the Supreme Court of the United States in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which was effectively overruled by the enactment of 28 U.S.C. § 1367 in 1990.